667 So.2d 132 (1992)
Johnny Jesse NEWMAN
v.
STATE.
CR-91-961.
Court of Criminal Appeals of Alabama.
November 25, 1992.
Rehearing Denied January 22, 1993.
*133 Charles McDougle, Jr., Dothan, for appellant.
James H. Evans and Jeff Sessions, Attys. Gen., and Norbert Williams, Asst. Atty. Gen., for appellee.
PATTERSON, Judge.
The appellant, Johnny Jesse Newman, was convicted after a jury trial of the capital offense of murder committed during the course of a burglary, in violation of § 13A-5-40(a)(4), Code of Alabama 1975. He was sentenced to life in prison without the possibility of parole. He raises 10 issues on appeal; however, because we reverse on this issue, we need only discuss whether the state exercised its peremptory challenges in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
At trial, the court stated that it did not believe that the appellant had proved a prima facie case of discrimination, but it nevertheless ordered the state, over objection, to provide reasons for its strikes. Therefore, this court will review the propriety of those strikes. See Huntley v. State, 627 So.2d 1013, 1016 (Ala.1992) (wherein the court held that "the reviewing court's inquiry, whether the State's explanations are offered voluntarily or by order of the trial judge, shall not be restricted by the mutable and often overlapping boundaries inherent within a Batsonanalysis framework, but, rather, shall focus solely upon" the trial court's determination of the propriety of the strikes); McLeod v. State, 581 So.2d 1144 (Ala.Cr.App. 1990); Currin v. State, 535 So.2d 221 (Ala.Cr. App.), cert. denied, 535 So.2d 225 (Ala.1988). See also Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).
The appellant contends that the state improperly struck black venirepersons because, he says, the voir dire does not support the state's proffered reasons for its strikes of black venirepersons. Because one unconstitutional strike requires reversal, see Ex parte Bird, 594 So.2d 676 (Ala.1991); Harrell v. State, 555 So.2d 263 (Ala.1989); Parker v. State, 568 So.2d 335 (Ala.Cr.App.1990), we need discuss only the strike that we conclude was improper.
The prosecutor stated that he struck J.M., venireperson no. 90, because a deputy sheriff knew her. He also stated that "we" checked her address to confirm her identity and that she was from Gordon. He further stated that the deputy told him that "just about the whole family ... has been prosecuted by our staff here in this circuit" and that consequently he believed that she would be biased against state. Our examination of the voir dire questioning reveals that J.M. did not respond to the prosecutor's voir dire question of whether any of her family members or friends had been prosecuted for committing a felony.
It could be argued that the prosecutor's reason for striking J.M. did not conflict with her silence because the prosecutor did not distinguish whether the crimes for which her relatives had been prosecuted were misdemeanors or felonies, whereas her silence could only be taken to mean that she knew of no felony prosecution. However, we will not resort to speculation on the question of whether the prosecutor, in giving his reason, was speaking only of misdemeanors; if he had knowledge that the veniremember's relatives had been prosecuted for misdemeanors only, he should have so specified. Because he did not so specify, we are left only a the glaring inconsistency. If he did not know in what category the prosecutions fell, and it will be apparent below that he did not, we consider that he should have taken action to resolve any doubt that would have existed based on his information and the venireperson's silent declaration that none of her relatives had been prosecuted for a felony.
This strike is virtually indistinguishable from two of the strikes held to constitute reversible error in Walker v. State, 611 So.2d *134 1133 (Ala.Cr.App.1992). In Walker, the prosecutor struck two venirepersons because he had been told by an investigator and a probation officer that the venirepersons in question were related to persons who had been prosecuted and convicted. However, neither venireperson responded during voir dire when asked if any family member had been prosecuted for committing a felony. In reversing Walker's conviction and sentence, this court held as follows:
"The most troubling reasons for the state's strikes are that a veniremember's relative had a recorded criminal history (such as arrests, prosecutions, or convictions) and that he or she did not respond when asked on voir dire whether a relative had been prosecuted for a felony. While these reasons are, under some circumstances, valid race-neutral reasons for a strike, see, e.g., Powell v. State, 608 So.2d 411 (Ala.Cr.App.1992); Lynn v. State, 543 So.2d 704 (Ala.Cr.App.1987), aff'd, 543 So.2d 709 (Ala.1988), cert. denied, 493 U.S. 945 [110 S.Ct. 351, 107 L.Ed.2d 338] (1989); under other circumstances, they may be a sham or pretext for discrimination, see Ex parte Bird, 594 So.2d 676, 683 (Ala.1991). In Bird, the Alabama Supreme Court held that `the failure of the State to engage in any meaningful voir dire on a subject of alleged concern is evidence that the explanation is a sham and a pretext for discrimination' and that `if the prosecut[or] thinks that a veniremember may be related to a former defendant, [he] must ask the veniremember.' Id. (Citations omitted; emphasis added [in Walker ].) The Bird court also noted that `a simple question directed to the veniremember could have dispelled any doubt about a possible relationship.' Id. (Emphasis added.) A `prosecutor's self-imposed ignorance [should not] preclude a Batson claim.' Id. (quoting, Note, Batson v. Kentucky and the Prosecutorial Peremptory Challenge: Arbitrary and Capricious Equal Protection, 74 Va.L.Rev. 811, 827 (1988)). Compare Smith v. State, 590 So.2d 388, 390 (Ala.Cr.App.1991) (wherein the court, in holding that the defendant may not cross-examine jurors or go behind the prosecutor's information to determine if such information was true, stated that a `prosecutor may strike from mistake, as long as the assumptions involved are based on an honest belief and are racially neutral').
"Based on this rationale, even assuming that the reasons given by the prosecutor for his strikes of veniremembers nos. 117, 126, 34, 36, 35, and 98 based on their alleged relationship to alleged relatives with alleged recorded criminal history or on their failure to answer the related question on voir dire are true, we cannot conclude that those reasons are race neutral or facially valid. None of these veniremembers responded affirmatively when asked if any of their family members had been prosecuted for committing a felony (nor did any white veniremembers). The prosecutor never sought to confirm or to refute his assumptions with further questioning. Thus, we conclude that the voir dire examination is void of meaningful questions directed to the black veniremembers in regard to the particular reasons given for striking them.
"A prosecutor cannot simply presume, without further questioning to `dispel any doubt,' that a veniremember, who is under oath, did not answer a question truthfully merely because the prosecutor has hearsay evidence to the contrary. See Bird. See also Harrell v. State, 571 So.2d 1270, 1272 (Ala.1990), cert. denied, 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991) (wherein the court noted that `[t]he record fails to show that any of the five blacks responded to the prosecutor's questions in such a way as to give insight into why they were stricken'); Guthrie v. State, 598 So.2d 1013 (Ala.Cr.App.1991), cert. denied, 598 So.2d 1020 (Ala.1992) (trial court's ruling reversed for a total lack of voir dire questioning to support proffered reasons, some of which were based on alleged relationships with persons charged or convicted of crimes); Jackson v. State, 557 So.2d 855, 856 (Ala.Cr.App.1990) (trial court's ruling reversed where prosecutor failed to ask questions on voir dire `relating to the explanation he gave for his strikes of any black veniremember'); Avery v. State, 545 *135 So.2d 123, 127 (Ala.Cr.App.1988) (in addressing the reason that there had been other defendants in prior cases with the same last name, the court observed that the `prosecutor could have resolved her suspicions by asking a few simple questions on voir dire,' and that the Branch court found that `intuitive judgment or suspicion by the prosecutor is insufficient to rebut the presumption of discrimination,' 526 So.2d at 623); Floyd v. State, 539 So.2d 357, 362 (Ala.Cr.App.1987) (mere suspicion of relationship between veniremember and previously prosecuted defendant with same surname was held insufficient; prosecutor could have easily ascertained what relationship, if any, existed by asking a simple question on voir dire); Acres v. State, 548 So.2d [459] at 473 [Ala. Cr.App.1987] (striking of veniremember on belief that prosecutor's records showed her to have a conviction not upheld where a review of the records did not support this conclusion; a question on voir dire could have clarified this discrepancy).
"Here, the trial court had `nothing on which to make the required "sincere and reasonable effort to evaluate the evidence and explanations based on the circumstances as [it knew] them,"' Bird, 594 So.2d at 683 (quoting Branch [v. State,] 526 So.2d [605] at 624 [(Ala.1987) ]), except the prosecutor's unsupported assertion that each veniremember struck was related to someone prosecuted for a felony in the face of each veniremember's implied denial of any such relationship. We find that the prosecutor's rationale `in substance, amounted to a "mere general assertion" of nondiscrimination,' 594 So.2d at 683, especially in light of each veniremember's silence when asked the question intended to elicit any relationship. Because the prosecutor's suspicion of the veniremember's relationship with someone with a recorded criminal history or the veniremember's failure to answer the related question on voir dire was the sole basis for the prosecution's striking of veniremembers nos. 126, 34, and 35, the judgment must be reversed and the case remanded for a new trial. See Bird, 594 So.2d at 683 (`one unconstitutional peremptory strike requires reversal'); Harrell v. State, 555 So.2d 263 (Ala.1989); Parker v. State, 568 So.2d 335 (Ala.Cr.App.1990)."
Id. at 1139-40 (footnote omitted).
Because the strike of J.M. is indistinguishable from the strikes of venirepersons nos. 126 and 35 held reversible in Walker, this cause must be reversed and remanded for a new trial.[1]
REVERSED AND REMANDED.
TAYLOR and McMILLAN, JJ., concur.
BOWEN, P.J., dissents with opinion.
MONTIEL, J., joins in the dissent.
BOWEN, Presiding Judge, dissenting.
I dissent from the opinion of the majority reversing the appellant's conviction on the ground that the prosecutor failed to give a race-neutral reason for striking veniremember J.M. from the jury venire.
Thirteen of the 63 members, approximately 20%, of the jury venire were black. The prosecution used six of its 17 peremptory strikes against blacks. Apparently, there were four black jurors, 33%, on the jury that tried and convicted the appellant. In determining "`the propriety of the ultimate finding of discrimination vel non,'" Huntley v. State, 627 So.2d 1013, 1016 (Ala.1992), this is a significant (although not controlling) factor to consider. Compare Ex parte Bird, 594 So.2d 676, 680 (Ala.1991) ("To be sure, the fact that a larger percentage of black veniremembers eventually is seated on the jury raises less suspicion than if a smaller representation is seated and affords less support for a prima facie case of discrimination").
Despite this Court's statements in Walker v. State, 611 So.2d 1133 (Ala.Cr.App.1992), I find that, under the facts of this case, the prosecutor's reason was sufficient. In Hernandez v. New York, 500 U.S. 352, 360, 111 *136 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991), the Supreme Court of the United States stated:
"A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."
This Court has previously upheld as race neutral the reasons given by the prosecutor for striking black members of the venire that were based upon information obtained from law enforcement officers. Where this information concerns the veniremember's involvement with crime, an explanation based upon this knowledge has been upheld. King v. State, 612 So.2d 1333 (Ala.Cr.App.1992) (strikes of veniremembers on basis of criminal histories upheld where information was obtained from a "computer printout from the Alabama Criminal Justice Information Center and the National Crime Information Center"); Wilsher v. State, 611 So.2d 1175, 1181 (Ala.Cr.App.1992) (strike of veniremember on basis of involvement in crime upheld where "a member of the district attorney's office had checked the jury list through `the State Unified Judicial System computer terminal' and had made a note `next to [the veniremember's] name indicating that he had been charged with assault, third degree, and... DOC'"); Sistrunk v. State, 599 So.2d 87, 88-89 (Ala.Cr.App.1992) (strike of veniremember on basis of involvement in crime upheld where information was received from a member of the local police department); McLeod v. State, 581 So.2d 1144, 1154-55 (Ala.Cr.App.1990) (strike of veniremember on basis of involvement in crime upheld where "a deputy sheriff had informed the district attorney's office that this person was `dealing in drugs, but he just hasn't been caught yet'"). In Robinson v. State, 560 So.2d 1130, 1133 (Ala.Cr.App.1989), this Court issued the following warning:
"We caution that a prosecutor's exercise of a peremptory challenge of a black venireperson based solely upon the recommendation of a law enforcement officer is highly suspect. However, the underlying basis for the recommendation may supply a racially neutral reason for the exercise of a peremptory challenge."
The absence of questions or meaningful questions on voir dire has been held to indicate that an explanation for a strike was merely a sham or a pretext. See, e.g., Ex parte Bird, 594 So.2d at 683, 685 (prosecutor did not inquire on voir dire about one veniremember's suspected relationship with a former defendant or about another veniremember's apparent nonuse of college degree); Hemphill v. State, 610 So.2d 413 (Ala. Cr.App.1992) (prosecutor did not inquire on voir dire about veniremember's suspected acquaintance with defense counsel). However, the challenged party is not required "to engage in extensive, and potentially alienating, voir dire" with regard to a veniremember's acquaintance with the accused or witnesses for the accused. See Wilsher v. State, 611 So.2d 1175 (Ala.Cr.App.1992).
Explanations that are contradicted by the actual voir dire may also be deemed deficient. See, e.g., Ex parte Yelder, 630 So.2d 107, 110 (Ala.1992) (prosecutor's explanation that he struck veniremember because he "`couldn't understand a word she said,' [due to] `the way she put her sentences together'" was belied by veniremember's actual responses on voir dire); Jackson v. State, 594 So.2d 1289, 1293-94 (Ala.Cr.App.1991) (prosecutor's explanation that the veniremember was struck "because `it was shown through voir dire the she was acquainted with and lived close to an individual'" that the State was attempting to extradite, was discredited by record of voir dire that showed the veniremember knew the individual "only minimally and that her acquaintanceship with him occurred a number of years previous to th[e] trial").
The State is not "required to produce all notes, reports, or other documents that it uses in exercising its peremptory challenges." Ex parte Thomas, 601 So.2d 56, 58 (Ala.1992).
A veniremember's involvement in or connection with criminal activity may serve as a race-neutral reason for the strike of that veniremember. E.g., Wilsher v. State, 611 So.2d 1175, 1181 (Ala.Cr.App.1992) (one veniremember had been "charged with or convicted of crimes in the past"; another *137 veniremember "had been charged with assault, third degree, and ... DOC"); Whittlesey v. State, 586 So.2d 31, 32 (Ala.Cr.App. 1991) (veniremember had been investigated for rape although grand jury ultimately "no billed" the case); Avery v. State, 545 So.2d 123, 126 (Ala.Cr.App.1988) (veniremember was a "defendant in a pending criminal case"). "This connection with or suspicion of criminal activity includes the juror in question, as well as close relatives and friends of the juror." Heard v. State, 584 So.2d 556, 560 (Ala.Cr.App.1991); accord Davis v. State, 555 So.2d 309, 314 (Ala.Cr.App.1989); Baker v. State, 555 So.2d 273, 276 (Ala.Cr.App. 1989). "[A] prosecutor may use peremptory challenges when he cannot formulate and sustain a legal objection to a juror, and yet has reason to question the impartiality of a juror due to his habits and associations." United States v. Vaccaro, 816 F.2d 443, 457 (9th Cir.), cert. denied, 484 U.S. 928, 108 S.Ct. 295, 98 L.Ed.2d 255 (1987).
The standard for reviewing factual findings by the trial court in Batson proceedings is set out in Ex parte Branch, 526 So.2d 609, 625 (Ala.1987): An appellate court "`may only reverse the trial judge's determination that the prosecution's peremptory challenges were not motivated by intentional discrimination if that determination is clearly erroneous.'" (Emphasis added.) This standard was most recently approved in Bui v. State, 627 So.2d 855 (Ala.1992). Furthermore, in Bui, our Alabama Supreme Court held that a prosecutor's failure to explain one peremptory strike of a black veniremember was not fatal. "[I]n reviewing allegations that the prosecutor exercised the state's peremptory strikes in a racially discriminatory manner, `the reviewing court's inquiry ... shall not be restricted by the mutable and often overlapping boundaries inherent within a Batson-analysis framework, but, rather, shall focus solely upon the "propriety of the ultimate finding of discrimination vel non."'" Bui, 627 So.2d at 859 (quoting Huntley v. State, 627 So.2d 1013 (Ala.1992)).
For these reasons, I dissent.
NOTES
[1] The strike of veniremember no. 34 in Walker is distinguishable from the strike in the instant case.